```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY


 SHANNON CAMPBELL,              :    HON. JEROME B. SIMANDLE
                                :
              Plaintiff,        :    Civil No. 09-4344 (JBS/JS)
                                :
      v.                        :
                                :         OPINION
 SCOTT BRUGGEWORTH, et al.,     :
                                :
              Defendants.       :
                                :
```

APPEARANCES:

Michael Wiseberg, Esq.
345 Route 17 South
Upper Saddle River, NJ 07458
    Attorney for Plaintiff Shannon Campbell

Allan E. Richardson, Esq.
Charles B. Austermuhl, Esq.
RICHARDSON & GALELLA
142 Emerson Street
Suite B
Woodbury, NJ 08096
    Attorneys for Defendants Scott Bruggeworth, DDS, and Signature Smiles

Stephen H. Schechner, Esq.
155 Morris Avenue
Suite 203
Springfield, NJ 07081
    Attorney for Defendant Louis Allora, DMD

**SIMANDLE**, Chief Judge:

I. **INTRODUCTION**

    This matter is before the Court on Defendants Scott Bruggeworth, DDS, and Signature Smiles' motion for summary judgment [Docket Item 20] and Defendant Louis Allora's, DMD, motion for summary judgment [Docket Item 22.]  Both motions for

summary judgment argue that Plaintiff Shannon Campbell's complaint for dental malpractice should be dismissed because it is barred by the statute of limitations.

For the reasons discussed herein, the court will grant both motions for summary judgment.

## II. BACKGROUND

The instant dental malpractice action arises out of dental treatment performed on the Plaintiff by Defendants Scott Bruggeworth, DDS, Signature Smiles and Louis Allora, DMD (collectively "Defendants") after Plaintiff broke her jaw and lost several teeth in a motor vehicle accident in 2002. Defendant Signature Smiles is the dental office of Defendant Scott Bruggeworth. Defendant Bruggeworth contracted with Defendant Louis Allora in providing dental treatment to the Plaintiff.

On December 17, 2002, Plaintiff was seen by Defendant Bruggeworth for the first time following her injury in the motor vehicle accident. (Def. Allora's Ex. B, "Progress Notes," at 1.) At this consultation, Dr. Bruggeworth discussed options for dealing with her missing four bottom front teeth. (Def. Bruggeworth's Ex. B, Dep. of Shannon Campbell, "Campbell Dep.," at 19:23-20:12.) Dr. Bruggeworth advised that Plaintiff was too young to have false teeth and explained that implants would "look like your real teeth and this will act and serve as your real

2

teeth, you'll eat and be able to go on with life like this never happened." (Campbell Dep. at 26:5-8.) The Plaintiff agreed to the implants and understood the implant process to involve putting three pieces of metal into her jaw and then something placed on top of the metal that looked like her real teeth. (Campbell Dep. 28:13-29:8.)

Defendant Allora also became involved in Plaintiff's treatment, but the Plaintiff was unable to separate out what treatment was provided by Bruggeworth and what was provided by Allora, since she often saw them both at office visits. (Campbell Dep. at 25:1-27:9; 44:13-45:13.)

Plaintiff proceeded with the implantation procedure. Dr. Allora performed the implant procedure on the Plaintiff on May 23, 2004. (Campbell Dep. at 25:1-12 and Progress Notes at 5.) After the Plaintiff had healed from the implantation procedure, four permanent teeth were affixed to the implantations. (Campbell Dep. at 35:6-9.) On December 17, 2004, Dr. Bruggeworth completed the restoration and cemented the bridge with "temp cement." (Progress Notes at 8.) When putting in the permanent teeth, Dr. Bruggeworth told the Plaintiff, "Now, these are not going to come out, these are – this is done, like these are in. . . . These are going to stay in and there's no reason for us to have to go back in there again." (Campbell Dep. 40:7-11.)

Less than two weeks later, the Plaintiff's bridge with her

permanent teeth became loose.  (Campbell Dep. 40:16-20.)  When the Plaintiff returned to Dr. Bruggeworth to have her bridge fixed, Dr. Bruggeworth told the Plaintiff he had not put the teeth in with a permanent solution "in case he had to go back in and do something with the implant."  (Campbell Dep. 41:13-14.) The Plaintiff was upset because she was told the teeth were permanently in place when Dr. Bruggeworth first installed them. (Campbell Dep. 41:1-21.)  Dr. Bruggeworth then recemented the bridge with "temp cement" a second time on December 20, 2004. (Progress Notes.)

   The Plaintiff continued having problems with her dental apparatus becoming unattached.  The Plaintiff went back to Dr. Bruggeworth on August 26, 2005, and Dr. Bruggeworth recemented the bridge into place with Durelon cement.  (Progress Notes at 8.)  The Plaintiff saw Dr. Bruggeworth again on October 18, 2005, and Dr. Bruggeworth again recemented Plaintiff's bridge into place, this time for no charge.  (Progress Notes at 8.)  Each time the Plaintiff went back to the Defendants, "the doctors kept saying they really wouldn't come out, now they're in, now they're in, and it continued to happen."  (Campbell Dep. 43:23-25.)

   After several visits to the Defendants to recement her bridge, the Plaintiff was at a job serving as a waitress when her teeth fell out in the middle of a shift.  (Campbell Dep. 43:15-16.)  The Plaintiff was mortified  and "ran to a drugstore and

4

grabbed dental adhesive to get them to stay in there, and from that point on I pretty much continued to use that." (Campbell Dep. 43:17-20.) The Plaintiff continued to hold her bridge in place with over the counter dental adhesive.

The Plaintiff moved from New Jersey to Wisconsin sometime in 2006. (Campbell Dep. 38:16-19.) Prior to moving to Wisconsin in 2006, the Plaintiff ceased going to the Defendants for dental care for "quite a while." (Campbell Dep. 45:18-21.) The Plaintiff explained her decision to stop her dental care with the Defendants:

> Because after going to see him on several occasions I had worked with him for a long period of time, I had gone through pain, visits, missed work, you know, everything with these doctors telling me that everything was going to be fine, and then they finally put the teeth on and they are popping out of my mouth all over the place. And I had gone back on several occasions and said to them, you know, this isn't what it was supposed to be. This was – you told me that this was going to be a permanent thing . . . they kept telling me it's not going to happen again, why am I going to make an appointment to see you and you're not fixing them? I was frustrated and agitated with the entire situation and so I didn't, I didn't.

(Campbell Dep. 45:23-46:7; 46:15-46:19.)

The Plaintiff moved to Wisconsin in 2006 and continued to keep her teeth in place by using over the counter dental adhesive and gluing the bridge into place daily. (Campbell Dep. 56:3-9; 57:14-16.)

In May 2009, the Plaintiff saw Dr. Jumes, a dentist in Wisconsin, to address the problem with her bridge. The Plaintiff

5

stated that she delayed in seeking treatment from 2006 to 2009 because she did not have insurance, she had just moved, and she felt the dental adhesive was "something that I was going to have to deal with." (Campbell Dep. 53:23-54:1.) Eventually, the Plaintiff started to date someone and her teeth began to chip and she got "fed up with it." (Campbell Dep. 54:2-5.)

Plaintiff then sought out Dr. Jumes, whom she "looked up in the phone book." (Campbell Dep. 54:12-13.) The Plaintiff saw Dr. Jumes for the first time in May 2009. (Campbell Dep. 55:25-56:2.) Dr. Jumes recemented her bridge into place but it fell out a few days later. (Campbell Dep. 60:21-61:9.) Dr. Jumes made a temporary piece to replace the Plaintiff's bridge unit made by the Defendants. (Campbell Dep. 61:18-20.) Dr. Jumes then referred the Plaintiff to Dr. Glapa. (Campbell Dep. 61:11-13.)

Dr. Glapa told the Plaintiff that "a lot of work needs to be done." (Campbell Dep. 62:7-8.) Dr. Glapa told the Plaintiff:

> that the center implant has been placed improperly and they have used mismatched hardware, to my knowledge, and that the set of teeth that are sitting on her now will never sit in solidly and stay in permanently because the implants are placed improperly . . . so that work that was already done will have to be redone.

(Campbell Dep. 63:23-64:4; 64:9-10.)

The Plaintiff then filed the instant action on August 24, 2009 against Defendants Bruggeworth and Signature Smiles. [Docket Item 1.] The Plaintiff amended her complaint to include Dr.

6

Allora as a Defendant.  [Docket Item 14.]  The Plaintiff's complaint alleges one count of dental malpractice against all Defendants.  This court has jurisdiction pursuant to 28 U.S.C. §1332(a).

Defendants Bruggeworth and Signature Smiles moved for summary judgment dismissing Plaintiff's complaint arguing her action is barred by the statute of limitations.  Defendant Allora then filed a second motion for summary judgment also arguing Plaintiff's complaint is time barred and must be dismissed.  The Defendants argue that a two year statute of limitations applies for dental malpractice actions pursuant to N.J.S.A. 2A:14-2.  The Defendants maintain that the Plaintiff knew she had been injured for purposes of tolling the statute of limitations when her dental apparatus first began falling out in December of 2004 and at the latest when she ceased seeing the Defendants for dental treatment presumably in early 2006.  Accordingly, this action should have been filed at the latest in 2008.  Since the Plaintiff did not file this suit until August 24, 2009, five years after the apparatus was installed and three years after she ceased her treatment with the Defendants, the Defendants argue the Plaintiff's complaint is barred by the statute of limitations.

The Plaintiff has filed opposition to this motion.  The Plaintiff does not dispute that N.J.S.A. 2A:14-2 is the

7

applicable statute of limitations in this case and the Plaintiff had two years to file the above action.  However, the Plaintiff argues that she did not know she was injured until her treatment with Dr. Glapa who told her that the implant had been surgically placed in her mouth improperly and the hardware used for the apparatus was mismatched.  Since the Plaintiff did not meet with Dr. Glapa until mid-2009, Plaintiff contends her action was filed well within the limitations period and should not be dismissed.  The Plaintiff has not submitted any report or affidavit from Dr. Glapa in support of her opposition and instead relies solely on Plaintiff's deposition testimony.

### III.  DISCUSSION

#### A.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.   The district court must "view the facts and draw reasonable inferences in the light most favorable to the

party opposing the summary judgment motion." Scott v. Harris, 550 U.S. 372, 378 (2007)

**B. Statute of Limitations**

The parties do not dispute that N.J.S.A. 2A:14-2[1] provides a two year statute of limitations period for Plaintiff's dental malpractice action. The main issue before the court is when the cause of action accrued to toll the two year limitations period.

In order to avoid the harsh consequences that would result from a mechanical operation of the statute of limitations, New Jersey courts have adopted the discovery rule. The New Jersey Supreme Court has explained the discovery rule doctrine:

> postpones the accrual of a cause of action so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity. Once a person knows or has reason to know of this information, his or her claim has accrued since, at that point, he or she is actually or constructively aware of that state of facts which may equate in law with a cause of action.

Savage v. Old Bridge-Sayreville Medical Group, P.A., 134 N.J. 241, 243 (1993)(citations omitted).

The discovery rule does not require a plaintiff to have "knowledge of a specific basis for legal liability or a provable

---

[1] N.J.S.A. 2A:14-2(a) states: "Every action at law for an injury to the person caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued; except that an action by or on behalf of a minor that has accrued for medical malpractice for injuries sustained at birth shall be commenced prior to the minor's 13th birthday."

9

cause of action." Guichardo v. Rubinfield, 177 N.J. 45, 51 (2003). Rather, the discovery rule provides that a cause of action accrues when "an injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272 (1973).

An objective standard is used when applying the discovery rule. "The question is whether the facts presented would alert a reasonable person exercising ordinary diligence that he or she was injured due to the fault of another." Martinez v. Cooper Hospital-University Med. Ctr., 163 N.J. 45, 52 (2000). Importantly, once "a plaintiff knows of an injury and that the injury is due to the fault of another, he or she has a duty to act." Guichardo v. Rubinfield, 177 N.J. 45, 52 (2003).

In this case, the discovery rule will not save Plaintiff's claim from being time barred. A reasonable person exercising ordinary diligence would have discovered she was injured by the Defendants in 2005 when the dental apparatus continually fell out of place despite several attempts by the Defendants to recement it. The Plaintiff was told by Defendant Bruggeworth when the teeth were first cemented onto the implant that this was a permanent solution and she would not have to have further work done. Days later, the teeth, which were supposedly permanently affixed, fell out of Plaintiff's mouth. Despite several visits

to the Defendants and multiple re-cementing attempts, Plaintiff's bridge would not stay in place. This resulted in the Plaintiff being "mortified" at work in 2005 when her teeth fell out during her waitress job. Any reasonable person exercising ordinary diligence in these circumstances would know in 2005 that the implantation procedure had not been successful and that she had been injured by the Defendants.

Further, without applying the objective standard, it is clear from Plaintiff's deposition testimony that she knew there was a problem with her implant and she had been injured by the Defendants. Specifically, the Plaintiff ceased her treatment with the Defendants after her visit in October, 2005, because her teeth kept falling out despite the Defendants' constant reassurance that the dental apparatus was permanently affixed. Indeed, the Plaintiff testified at her deposition:

> I had gone through pain, visits, missed work, you know, everything with these doctors telling me that everything was going to be fine, and then they finally put the teeth on and they are popping out of my mouth all over the place. And I had gone back on several occasions and said to them, you know, this isn't what it was supposed to be. This was – you told me that this was going to be a permanent thing . . . they kept telling me it's not going to happen again, why am I going to make an appointment to see you and you're not fixing them? I was frustrated and agitated with the entire situation and so I didn't, I didn't.

(Campbell Dep. 45:23-46:7; 46:15-46:19.)

At this point, the Plaintiff was even subjectively aware of a state of facts which would have provided her with a remedy at

11

law.  The Plaintiff knew she had been injured and the Defendants were at fault.

The facts of this case are distinguishable from <u>Fernandi v. Strully</u>, 35 N.J. 434 (1961), despite Plaintiff's arguments to the contrary.  In <u>Fernandi</u>, the plaintiff had a hysterectomy performed and subsequently suffered back pain.  <u>Id.</u> at 435.  The plaintiff sought treatment for her back pain, and after several rounds of medication and heat treatments, was sent for x-rays. <u>Id.</u> at 435-36.  The x-rays revealed that there was a foreign object which looked like a wing nut lodged in her abdomen.  <u>Id.</u> at 436.  The plaintiff then showed the x-rays to the doctor that performed her hysterectomy who confirmed that a wingnut had gone missing during her operation.  <u>Id.</u>  The plaintiff did not find out there was a wingnut in her abdomen until four years after her hysterectomy when the x-rays were taken, despite receiving constant treatment for her back pain during this four year period.  <u>Id.</u> at 435-36.  The plaintiff consequently filed her law suit outside the two year limitations period for medical malpractice actions.  <u>Id.</u>  In finding the Plaintiff's complaint was not barred by the statute of limitations, the New Jersey Supreme Court held:

> If a surgeon performing an operation upon a person leaves a foreign substance in the body, the statute of limitations as to an action against him, based upon alleged malpractice, does not commence to run until the said patient has discovered, or by reasonable diligence should have discovered, that a foreign substance was left

in his body.
Id. at 444.

The Plaintiff argues that she did not know that mismatched hardware was used in her surgical implantation until she met with Dr. Glappa in 2009. Therefore, like Fernandi, the Plaintiff contends that her cause of action did not accrue until 2009 when Dr. Glapa told her the surgical implantation procedure was performed incorrectly and the Defendants used mismatched hardware. Accordingly, the Plaintiff maintains her action is timely. This argument is unpersuasive given the facts of this case.

This case is unlike Fernandi, where the plaintiff truly had a foreign object in her body and had no way of knowing there was a wingnut in her abdomen. Here, the Plaintiff knew she was having hardware implanted in her gums and this hardware was supposed to keep her teeth permanently in place. While this hardware allegedly was not the brand of hardware the Plaintiff authorized, it certainly cannot be considered a foreign object, like a wingnut, that has no place inside one's body.[2]

Furthermore, the Plaintiff was well aware that the hardware installed in her gums was not performing its function of keeping

---

[2] The Plaintiff has not provided any evidence in support of Dr. Glapa's opinion. Dr. Glapa has not filed an affidavit, certification or expert report. Without these materials, the Court is unable to consider Dr. Glapa's opinion.

13

her teeth permanently in place because her teeth repeatedly fell out of her mouth.  The Plaintiff knew the implantation procedure had been performed wrong because her teeth repeatedly fell out, usually on a daily basis, when they were supposed to be permanently affixed in her mouth.  The Plaintiff even testified that her reason for seeking out Dr. Lumes and Dr. Glapa was because she "got fed up with it" and asked herself "do you really want this to bother you forever."  (Campbell Dep. 54:2-7.)  The Plaintiff knew before seeing Dr. Glapa in May 2009 that she was injured by the Defendants.

While an ordinary person would not have known the extent of the injury or the specificity of the injury until seeing a specialist, namely the alleged improper placement of the surgical implants and the alleged mismatched hardware, "knowledge of a specific basis for legal liability or a provable cause of action" is not required to determine accrual of a cause of action for limitations purposes.  <u>Guichardo v. Rubinfield</u>, 177 N.J. at 51.  All a plaintiff need know is that she has been injured and the injury is the fault of another.  Therefore, Plaintiff's argument that the cause of action did not accrue until the Plaintiff met with Dr. Glapa in 2009 who confirmed that the initial implantation procedure was performed improperly is without merit.

To hold otherwise would allow potential plaintiffs to delay bringing their cause of action by neglecting to seek prompt

medical treatment.  In <u>Fernandi</u>, on which the Plaintiff heavily relies, the injured plaintiff sought consistent medical treatment for her back pain following her hysterectomy until medical personnel discovered the unexpected wingnut in her abdomen. Here, the Plaintiff ceased her dental treatment with the Defendants in October 2005, and did not pursue dental treatment again until May 2009 when she saw Dr. Lumes in Wisconsin.  The Plaintiff delayed seeking medical treatment for her injury for over three years after she knew that the dental implant procedure performed by these Defendants had failed.

Indeed, the Plaintiff herself testified that she delayed seeking medical treatment in Wisconsin for over three years despite knowing there was a problem with her dental implant.  The Plaintiff eventually sought out Dr. Lumes and Dr. Glapa not because she did not understand she was injured, but because she got "fed up" with her injury to the point of being willing to spend money for treatment despite her lack of insurance.  While the Plaintiffs reasons for delay are understandable, they cannot prevent the running of the statute of limitations.

In this case, the statute of limitations began to run, at the latest, in October 2005, when the Plaintiff knew she was injured by the unsuccessful implant procedure but ceased her dental treatment with the Defendants.  Accordingly, the Plaintiff needed to file the instant action by October 2007.  The Plaintiff

did not file her dental malpractice case until August 2009, almost two years past the limitations period.

Therefore, the Plaintiff's complaint is barred by the statute of limitations and must be dismissed.

**IV. CONCLUSION**

For the reasons discussed herein, Defendants Scott Bruggeworth, DDS, and Signature Smiles' motion for summary judgment [Docket Item 20] and Defendant Louis Allora's, DMD, motion for summary judgment [Docket Item 22] are hereby GRANTED and the Plaintiff's complaint is dismissed.

The accompanying Order will be entered.

| | |
|---|---|
| **January 30, 2012** | **s/ Jerome B. Simandle** |
| Date | JEROME B. SIMANDLE |
| | Chief U.S. District Judge |